IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DEAN J. KONTER,

                       Plaintiff,

       v.

CSC CREDIT SERVICES, INC,

                     Defendant.

OPINION and ORDER

08-cv-159-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

     This is a civil action for monetary relief brought by plaintiff Dean Konter for violations of the Fair Credit Reporting Act, 15 U.S.C, § 1681. Originally plaintiff brought this action against defendant CSC Credit Services and former defendants Experian Information Solutions, Inc., Great Lakes Educational Loan Services and Trans-Union LLC. The claims against the former defendants have been dismissed with prejudice. Dkts. ## 51, 75, 77. All that remains are plaintiff's claims against defendant CSC Credit Services. Plaintiff contends that this defendant negligently and willfully violated the Fair Credit Reporting Act by failing to properly investigate and remove errors on plaintiff's credit report that caused plaintiff humiliation and severe emotional distress.

     Now before the court is defendant's motion for summary judgment on the grounds

that (1) its actions did not actually harm plaintiff and (2) its actions were not willful violations of the Act.  In opposition, plaintiff argues that he has adduced enough evidence to support a claim for "actual damages" and that defendant knowingly violated specific requirements set forth in the Act.  Jurisdiction is present.  28 U.S.C. §1331.

I conclude that plaintiff cannot prove an essential element of his claim because he has not shown sufficient evidence of "actual damages."  Therefore, defendant's motion for summary judgment will be granted with respect to plaintiff's claims for negligent violations of the Fair Credit Reporting Act.  I conclude as well that no reasonable jury could find that defendant acted in willful noncompliance with the Act.  Defendant's motion for summary judgment will be granted on this claim.

For the purpose of deciding this motion, I find the following facts to be undisputed and material.

UNDISPUTED FACTS

A. Parties

Plaintiff Dean Konter lives in Independence, Wisconsin.  He has a twin sister by the name of Deanise, who has a social security number different from his but similar.

Defendant CSC Credit Services, Inc. is a consumer credit reporting agency.  Creditors across the country report credit information about consumers to defendant.  Defendant does

not create any credit information, make loans or decide who should receive credit.

## B. Plaintiff's Disputed Credit Report

### 1. Discovery of inaccuracies in his credit report

Some time in 2005 or 2006, plaintiff and his wife applied for a mortgage with Badger Mortgage. They "were approved for a mortgage" but decided not to take out a loan because they "weren't ready to buy a house yet." In the process of applying for the mortgage, plaintiff noticed problems with his credit report, but he "didn't pay much attention at that time[.]"

On or about October 15, 2006, plaintiff purchased cell phones from AllTell. The AllTell agent told plaintiff that he "had no credit" and told him that he would have "to put $600 down in order [to buy the cell phones]." AllTell received plaintiff's credit report from Trans Union.

Sometime later, plaintiff requested his credit report and received one from defendant on November 29, 2006. The credit report listed plaintiff's correct name, social security number, and current address but also included two addresses and two names that were inaccurate. These were identified as former addresses and former names on the report. In addition, the report included eleven accounts that did not belong to plaintiff. In a cover letter, defendant asked plaintiff to identify any information he believed was incorrect.

2. <u>First dispute letter</u>

On or about December 28, 2006, plaintiff sent defendant a letter identifying the inaccuracies contained in his credit report. Plaintiff wrote, "your reporting agency appears to have confused my credit information with that of my twin sister Deanise J. Konter." Plaintiff also disputed responsibility for eleven accounts that were reported on his credit file. He enclosed a copy of one page of his November 20, 2006, credit report and stated on that page that he had never lived at P.O. Box 25, Arcadia, WI 54612 or N32376 County Road D, Blair, WI 54616. Additionally, Plaintiff wrote on that page, "I have never been known as Deanise Konter — she is my twin sister."

The letter was received by defendant on January 4, 2007. In response, defendant began an investigation of the dispute. When a consumer disputes information on a credit report, defendant investigates the dispute by contacting the creditor that is reporting the disputed information. Defendant sends the creditors a Consumer Dispute Verification form or an Automated Consumer Dispute Verification form. Using these forms, defendant tells the creditor what the consumer's dispute is and asks the creditor to investigate the information it has about the consumer and determine whether the information that it is reporting to defendant is correct and complete.

Defendant sent Automated Consumer Dispute Verification forms to all of the creditors that reported the disputed accounts. The form contained codes that informed the

4

creditors of the grounds for plaintiff's dispute.  In this case, defendant used a code that told the creditors that plaintiff believed that the account did not belong to him.  The form also contained a box entitled "[Fair Credit Reporting Act] Relevant Information."  This box was left empty.  After receiving the creditors' responses, defendant deleted 10 of the 11 accounts.  The 11th creditor, Great Lakes, verified defendant's reporting of plaintiff's account.

Ordinarily, defendant does not conduct investigations with regard to consumer disputes over former addresses, but simply deletes the disputed addresses.  These deleted addresses can reappear if the source of the address information reports it again.  Defendant does not track the sources of address information contained in a consumer's credit report; therefore, it does not know which of plaintiff's creditors submitted the disputed addresses.  Defendant did not remove the disputed addresses from plaintiff's credit report in response to plaintiff's first letter.

In January 2007, defendant's policy with regard to disputed former names was to randomly choose two accounts from the consumer's credit file that were not in dispute, and send these accounts an automated consumer dispute verification form inquiring whether plaintiff had ever used the disputed name.  To verify plaintiff's information, defendant sent Capital One and Rogers & Hollands forms stating "consumer states inaccurate information. Verify complete ID and account info. "

Capital One verified the name "Dean J. Konter" and "no other information."  Rogers

5

& Hollands "confirmed the name was just "Dean[.]"  Given these responses, defendant should have deleted the name "Denanise" from plaintiff's credit report in accordance with defendant's policy.  It did not.

On or about January 30, 2007, defendant sent plaintiff the results of its investigation and a copy of his revised credit report, which stated that defendant had

1) Deleted 10 of the 11 accounts about which plaintiff complained;
2) Left the Great Lakes account on the report because Great Lakes verified that it belonged to plaintiff;
3) Left the former Arcadia address and Blair addresses on the report as former addresses; and
4) Left the names "Denanise J Konter" and "Deanise J Konter" on the report as former names.

## 3. Second dispute letter

Some time later, plaintiff's wife telephoned defendant and spoke to one of its representative to dispute the errors contained in plaintiff's credit report, specifically the student loan from Great Lakes.  Plaintiff then sent defendant a letter dated February 6, 2007 to follow up on his conversation with the representative, in which plaintiff stated, "your reporting agency appears to have confused my personal information with my twin sister Deanise J[.] Konter."  Plaintiff enclosed a copy of the January 30, 2007 revised credit report, on which he noted his disputes.

Defendant received the letter on February 13, 2007 and conducted another investigation in response.  Defendant sent the same automated form to Great Lakes,

informing it that plaintiff denied that the account was his.  Great Lakes verified the same name, current address, and social security number.

On March 13, 2007, defendant sent plaintiff the results of its investigation and a revised credit report.  Defendant:

> 1) Left the Great Lakes account on the report because Great Lakes had verified that it belonged to plaintiff, but added the notation: "Consumer Disputes This Item" to plaintiff's credit report;
> 2) Deleted the former addresses that plaintiff disputed; and
> 3) Continued to list "Denanise J Konter" and "Deanise J Konter" as former names.

### 4. Additional dispute letters from counsel

On May 15, 2007, defendant received a letter from plaintiff's lawyer, Daniel Freund, asking defendant to remove the former names "Denanise J. Konter" and "Deanise J. Konter" from plaintiff's credit report.  Freund stated that Deanise J. Konter was plaintiff's sister.  In response to the letter, defendant sent out four more automated forms, two regarding the name "Denanise" and two regarding "Deanise," to Rogers & Hollands and Kohl's, asking whether plaintiff had ever used either of those names.  Rogers & Hollands and Kohl's confirmed again that plaintiff had never used either variation of his sister's name.  On June 14, 2007, defendant sent Freund a letter regarding the results of the investigation.  The former names "Deanise" and "Denanise" remained on plaintiff's credit report as well as the Arcadia address.

On June 15, 2007, defendant received another letter from Freund, stating that "I have yet to receive a response to the [May 9, 2007] letter" and requesting a response within two weeks.  On July 16, 2007, defendant sent Freund a revised copy of plaintiff's credit report that showed that defendant had deleted the disputed former names from plaintiff's credit report.  On or about August 21, 2007, defendant sent plaintiff a revised credit report that no longer contained plaintiff's sister's name but still showed the Arcadia address.

On September 4, 2007, defendant received another letter from Freund, asking defendant to remove the Arcadia address as a former address for plaintiff.  In response, defendant conducted an investigation and deleted the disputed address.  On October 1, 2007, defendant sent Freund a letter, explaining the results of its investigation and enclosing a revised copy of plaintiff's credit report that reflected these changes.

## C. Effects of Plaintiff's Credit Problems

Plaintiff was approved for loans from Arcadia State Bank and Pigeon Falls Bank during the time he was disputing information on his credit report with defendant.  He did not ask any of the banks for a different interest rate and never inquired whether having his twin sister's information on his credit report adversely affected his ability to secure loans or credit.  Plaintiff was never told that he would have gotten a better rate without such information.

8

During plaintiff's ongoing dispute with the credit agencies, plaintiff experienced loss of sleep at least once a week.  His wife, brother and mother-in-law observed him becoming more irritable, angry, anxious, depressed and fearful and exhibiting a sense of hopelessness as he struggled with fixing his credit problems.  Plaintiff felt humiliated that other people knew about the problems he was having with defendant because he told them about the issue.  Plaintiff also suffered from a loss of concentration at work but it "was probably unnoticed by [his] employer."  Plaintiff has not suffered any physical symptoms in connection with his distress

Plaintiff fought with his wife more frequently and withdrew from her emotionally.  Plaintiff told his wife that he was concerned about the long term effects of the problems with his credit reports.  Plaintiff's wife stated that their marriage "rapidly decline[d] in the respect that we fought all the time about this credit crisis."  According to plaintiff's wife, the problems with the credit report made plaintiff feel "inadequate as a father and as a husband."

OPINION

A. Summary Judgment Standard

Summary judgment is appropriate if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex

Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In deciding a motion for summary judgment, the court must view all facts and draw all inferences from those facts in the light most favorable to the non-moving party.  Schuster v. Lucent Technologies, Inc., 327 F.3d 569, 573 (7th Cir. 2003).  As the moving party, defendant bears the burden of showing that there is no genuine issue of material fact.  However, plaintiff retains the burden of producing sufficient evidence to a jury verdict in his favor.  "[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial."  Ruffin-Thompkins v. Experian Information Solutions, Inc., 422 F.3d 603, 607 (7th Cir. 2005).

### B. Defendant's Duties under the Fair Credit Reporting Act

The Fair Credit Reporting Act imposes a duty on credit reporting agencies to insure the accuracy of a consumer's credit report.  This duty exists whenever a credit report is issued, 15 U.S.C. § 1681e(b), and whenever a consumer disputes an item in his or her credit report.  15 U.S.C. § 1681i(a).  If a credit reporting agency, negligently violates any duty imposed by the statute, a plaintiff may collect "actual damages," costs and fees.  15 U.S.C. § 1681o.  If the violation is willful, statutory and punitive damages are available without proof of actual damages.  15 U.S.C. § 1681n.

10

Plaintiff contends that defendant failed to "follow reasonable procedures to assure maximum possible accuracy" as required by § 1681e(b) when it issued a credit report that contained inaccurate information regarding plaintiff to AllTell in October of 2006.  Plaintiff contends also that defendant violated § 1681i(a) by not conducting a reasonable investigation of plaintiff's disputed information, which included two aliases, a former address and a credit line, all of which belonged to plaintiff's sister.  According to plaintiff, both of these violations were willful because defendant's procedures for insuring the accuracy of credit reports and its investigation failed to comply with the requirement of the Act.

For the purposes of this motion, defendant does not defend its actions as reasonable. Instead it argues that even if it were negligent in carrying out its duties under the Act, it is not liable to plaintiff because plaintiff has failed to prove that he suffered "actual damages." Because neither party has moved for summary judgment on the issue of reasonableness, I will not address plaintiff's arguments on that matter.

Defendant's decision to forgo addressing the "reasonableness" question is risky but not entirely unconventional.  In addressing violations of § 1681i requiring consumer reporting agencies to reinvestigate the accuracy of a disputed credit report, the Court of Appeals for the Seventh Circuit has held that "[b]efore any discussion of the reasonableness of [a] reinvestigation is necessary, . . . [a plaintiff] must show that [he] 'suffered damages as a result of the inaccurate information.'" Ruffin-Thompkins, 422 F.3d at 608 (citing Sarver

11

v. Experian Information Solutions, 390 F.3d 969, 971 (7th Cir. 2004)); see also Wantz v. Experian Information Solutions, 386 F.3d 829, 833 (7th Cir. 2004).  In Ruffin-Thompkins, the court of appeals addressed only § 1681i, but the other section under which plaintiff is suing, § 1681e(b), requires the same showing of harm to obtain an award of "actual damages."  Crabill v. Trans Union, L.L.C., 259 F.3d 662, 664 (7th Cir. 2001) ("Without a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of 'actual damages[.]'").

Even if a plaintiff cannot prove actual damages, he is not barred from recovering statutory or punitive damages if the defendant's violations are willful.  Casella v. Equifax Credit Information Services, 56 F.3d 469, 476 (2d Cir. 1995) ("punitive damages may be available even where a plaintiff has sustained no actual damages").  Defendant disputes plaintiff's inability to succeed on this claim, arguing that he has failed to produce evidence of willfulness.

C.  Plaintiff's "Actual Damages"

Under the Fair Credit Reporting Act, "actual damages" include but are not limited to the denial of credit or receiving a higher interest rate as a result of an inaccurate credit report.  Crabill, 259 F.3d at 664  (damages can include harms other than loss of credit). Other harms compensable under the Act include out-of-pocket losses, damage to character

12

and mental distress.  Scheel-Baggs v. Bank of America, 575 F. Supp. 2d 1031 (W.D. Wis. 2008); Kronstedt v. Equifax, No 01-C-52-C, 2001 WL 34124783 *10 (W.D. Wis. Dec. 14, 2001) (citing Cousin v. Trans Union Corp., 246 F.3d 359, 369 n.15 (5th Cir. 2001), and Guimond v. Trans Union Credit Information Co., 45 F.3d 1329, 1333 (9th Cir. 1995)).

Plaintiff has produced no evidence that he was denied credit or received higher interest rates as a result of the inaccurate credit report.  He says only that it is possible he paid higher interest rates as a result of the inaccuracies.  Although plaintiff alleged in his complaint that he incurred "out-of-pocket" litigation expenses, he failed to propose any facts in support of this allegation.  Accordingly, he has waived the claim for damages.  Wojtas v. Capital Guardian Trust Co., 477 F.3d 924, 926 (7th Cir. 2007) (failure to oppose arguments raised on motion for summary judgment constitutes waiver).

The one pecuniary injury claim that plaintiff does develop is his allegation that AllTell required him to pay a $600 deposit in order to purchase cell phones in October 2006 as a result of the inaccurate credit report issued by defendant.  This claim fails on two grounds.  First, plaintiff has offered no proof that AllTell based its decision on a credit report issued by defendant.  In fact, the only proof plaintiff has that the $600 deposit is connected to a credit report is the testimony he gave at his deposition in which he expressly stated that the credit report AllTell looked at was from Trans Union, a different credit agency.  Fogelman Dep., Exh. A., dkt. #56, at 129, ln. 16 -130, ln. 25.

13

Second, plaintiff cannot recover for any denial of credit or adverse credit decisions he suffered before he notified the credit agency about the disputed information.  McKeown, 335 F. Supp. 2d 917, 929-30 (W.D. Wis. 2004) (citing Henson v. CSC Credit Services, 29 F.3d 280, 285 (7th Cir. 1994)).  The AllTell incident occurred in October of 2006, two months before plaintiff notified defendant of any inaccuracies in his credit report.  Without a causal link between the alleged injury and defendant's action or inaction and without a showing that the alleged injury occurred after he notified defendant of the reporting error, plaintiff cannot show that he suffered actual damages from AllTell's $600 deposit request.

With respect to plaintiff's claims for damages for humiliation and emotional distress, defendant argues that as a matter of law plaintiff cannot recover for the humiliation he experienced and that he has failed to explain his injury in sufficient detail.  As an initial matter, "[a] defendant cannot be held liable for the embarrassment a party suffers as a result of others learning of the derogatory information unless that defendant is responsible for their finding out."  McKeown, 335 F. Supp. 2d at 933; see also Casella, 56 F.3d 469;  Sarver, 299 F. Supp. 2d at 877 ).  This flows logically from the requirement that plaintiff prove that defendant caused the harm plaintiff suffered.  In this case, plaintiff has offered no proof that defendant transmitted the embarrassing information to third parties.  Instead, it was plaintiff who told other people about his problems.  As a matter of law, plaintiff cannot recover for the humiliation he allegedly suffered.

14

With respect to the other emotional distress plaintiff suffered, he must do more than declare in conclusory fashion that he was "embarrassed and humiliated" but must explain his injury in reasonable detail.  Ruffin-Thompkins, 422 F.3d at 609 (strict standard for finding of emotional distress because too easy to manufacture); Wantz, 386 F.3d at 834. In McKeown, 335 F. Supp. 2d at 932, I held that a plaintiff must submit evidence that "'reasonably and sufficiently explains the circumstance of his injury and does not resort to mere conclusory statements.'"  In McKeown, for example, the plaintiff presented evidence of the anxiety he suffered worrying that he would lose the property he wished to purchase or that he would be unable to secure a mortgage for which he had applied.  I found this level of detail reasonable and sufficient.  Id. at 932.  In addition, a plaintiff must link the violation of the statute to the alleged harm.  Crabill, 259 F.3d at 664 ("Without a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of 'actual damages[.]'").

In his deposition, plaintiff testified that while he was dealing with his credit problems, he fought more frequently with his wife, which had a negative effect upon his marriage, and he suffered from loss of sleep.  Fogelman Dep., Exh. A., dkt. #56, at 46, ln. 22 - 47, ln. 24; 49, lns. 2 - 18; 54, ln. 13 - 56, ln. 19.  Moreover, plaintiff has submitted affidavits from his wife, brother and his mother-in-law in which each affiant avers that plaintiff suffered during this time from increased irritability, anger and depression.  Aff. Jaclyn Konter, dkt. #57; Aff.

15

Craig Konter, dkt. #58; Aff. Melanie Simone, dkt. #59.

Neither plaintiff's deposition nor the affidavits provided by his family contain a direct link between the inaccurate information on defendant's credit report and his emotional distress. Instead, all the affidavits describe plaintiff's "credit problems" with the "credit reporting agencies" and the "credit bureaus." It is unclear from the evidence whether plaintiff's family is referring to problems for which defendant is responsible or credit problems with other credit reporting agencies originally named in his complaint.

Moreover, plaintiff's only allegation is that having the disputed names, addresses and account on his credit report caused him emotional distress. He does not say that inaccurate information stopped him from attempting to secure a loan or credit or caused him fear that he would be rejected for a loan for which he applied. Unlike the plaintiff in McKeown, plaintiff has not averred that he was concerned about losing a mortgage, a loan or any other form of credit because of the ongoing dispute.

Instead, the only evidence adduced by plaintiff regarding the potential impact of the "inaccurate information" comes in the way of general observations about how the credit dispute affected him. For example, his wife testified that plaintiff "was very concerned about the long term effects of the problems with his credit reports containing mixed information and other inaccuracies." Aff. Jaclyn Konter, dkt. #57, at 2, ¶5. Plaintiff's brother and mother-in-law use broad and conclusory language to describe the effect plaintiff's credit

16

dispute had on him, such as making him "irritable, angry, anxious, depressed and fearful." Aff. Craig Konter, dkt. #58, at 1-2, ¶3-4; Aff. Melanie Simon, dkt. #59, at 1-2, ¶3-4.

The only specific details plaintiff offered regarding the emotional distress he experienced relate to his humiliation and the effect of the ongoing dispute on his marriage. In his deposition testimony, plaintiff describes himself as "humiliated and embarrassed" because other people knew about his problems, Fogelman Dep, Exh. A., dkt. #56, 52, lns. 4-20, and "frustrated and angry" because he could not buy cell phones. Id., at 44, lns. 5-16. However, as previously discussed, it was plaintiff's fault that other people may have known about his problems and defendant cannot be held liable for plaintiff's difficulty in securing cell phones without a $600 deposit when it did not know of any inaccuracies in plaintiff's credit report. Although the evidence contains references to the negative effect on plaintiff's marriage and the increase in fighting between plaintiff and his wife, both plaintiff (in his deposition) and his wife (in her affidavit) identify the cause of the problem as plaintiff's ongoing credit disputes with the credit reporting agencies.

Despite having the burden to prove that defendant caused his emotional injuries, plaintiff has not produced evidence that draws a direct or causal link between defendant's actions and the emotional injury plaintiff suffered. Cousin v. Trans Union Corp., 246 F.3d 359, 370-71 (5th Cir. 2001) (plaintiff denied recovery when he showed that he had suffered emotional distress from credit denial but did not prove that denial was based on defendant's

17

credit report); <u>Schmit v. Trans Union LLC</u>, 2004 WL 785098, at *4 (N.D.Ill. April 12, 2004) (no recovery when plaintiff made only an assertion of emotional distress and produced no evidence linking it to erroneous report).  All of plaintiff's "evidence" of the harm he suffered rests on broad and conclusory statements about his emotional condition at the time.  Therefore, I conclude that plaintiff has failed to draw a causal connection between defendant's alleged violation and his emotional distress and that he has failed to offer  reasonably detailed evidence of his injuries.  This evidence is inadequate as a matter of law.  Because plaintiff cannot show that he suffered actual damages, I will grant defendant's motion for summary judgment on plaintiff's claim that defendant negligently violated the Fair Credit Reporting Act.


### D.  <u>Willful Violations of the Fair Credit Reporting Act</u>

As discussed above, plaintiff asserts claims for willful as well as negligent violations of the Fair Credit Reporting Act.  Section 1681n provides statutory damages of not less than $100 and not more than $1,000 when violations are willful.   "To show willful noncompliance, a plaintiff must show that the defendant 'knowingly and intentionally committed an act in conscious disregard for the rights of others.'" <u>McKeown</u>, 335 F. Supp. 2d at 939 (W.D. Wis. 2004).   Willful violations of the Act include "intentional concealments or misrepresentations, <u>id.</u>; <u>see also</u> <u>Cousin v. Trans Union Corp.</u>, 246 F.3d 359

(5th Cir. 2001) ("Generally, courts have allowed a willful noncompliance claim to proceed where a defendant's conduct involves willful misrepresentations or concealments."); Stevenson v. TRW Inc., 987 F.2d 288, 294 (5th Cir. 1993) (observing that early case law awarded punitive damages for acts of concealment and misrepresentation), and reckless violations. Safeco Insurance Co. of America v. Burr, 127 S. Ct. 2201, 2215 (2007) ("[A] company subject to [the Fair Credit Reporting Act] does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."); see also Murray v. New Cingular Wireless Services, Inc., 523 F.3d 719, 725-26 (7th Cir. 2008).

Plaintiff advances five grounds for his punitive damages claim against defendant: (1) it failed to forward to Great Lakes all relevant information regarding the dispute that it received from plaintiff; (2) it failed to conduct any investigation with respect to the disputed former addresses and merely deleted them; (3) it reinserted into plaintiff's credit history previously deleted material without notifying plaintiff it had done so; (4) it failed to delete the "former names" in plaintiff's credit history when the discrepancy could not be verified; and (5) it failed to prevent merging plaintiff's credit history with that of his sister.  In response, defendant argues that these errors do not constitute willfulness as a matter of law.  At worst, they were negligent violations.  Defendant adds that plaintiff has failed to produce

19

evidence that its procedures were not reasonable.

1. Defendant's failure to forward plaintiff's information to Great Lakes

Plaintiff argues that defendant should have forwarded to Great Lakes all the information he provided, including the true attribution of the disputed information pertaining to plaintiff's sister, instead of merely stating to Great Lakes that the account did not belong to plaintiff. Although plaintiff contends that failing to forward *all* the information constitutes a willful violation, the Act does not require a credit reporting agency to forward "all" information provided by the consumer, only "all relevant information." 15 U.S.C. § 1681i(a)(2)(A). Contrary to plaintiff's suggestion, it is not unreasonable for defendant to read the statute as not requiring it to include irrelevant material, which in its view included plaintiff's information about his sister. At worse, defendant's reading was careless and its violation negligent. It cannot be characterized as reckless.

2. Defendant's failure to conduct proper investigations of former addresses, reinsertion of deleted material without notifying plaintiff and failure to delete names

Although plaintiff presents these as three separate grounds for noncompliance, all three are allegations that defendant failed to properly investigate the former addresses and names or remove them from credit report and then allowed a former address to reappear

20

without notifying plaintiff.  Defendant admits that it does not conduct investigations of former addresses that appear on a plaintiff's credit report but simply deletes them.  In this instance, however, the undisputed facts show that defendant did not delete the disputed addresses after plaintiff's initial complaint.  After plaintiff complained a second time, defendant deleted the addresses but not the former names on the March 13, 2007 credit report.  One of the addresses reappeared on plaintiff's credit report in July 17, 2007, although, it was removed after plaintiff notified defendant of the error.  In addition, defendant conducted an investigation regarding the former names on plaintiff's credit report but could not verify them as belonging to plaintiff.  Defendant acknowledges that it should have deleted these names but failed to do so until August 21, 2007.

As an initial matter, the mere reappearance of disputed information on a credit report does not make out a claim for willfulness.  Anderson v. Trans Union, LLC, 345 F. Supp. 2d 963, 976 (W.D. Wis. 2004); see also Philbin v. Trans Union Corp., 101 F.3d 957, 970 (3d Cir. 1996); Casella v. Equifax Credit Information Services, 56 F.3d 469, 476 (2d Cir. 1995); Cahlin v. General Motors Acceptance Corp., 936 F.2d 1151, 1156 (11th Cir. 1991).  To hold defendant liable for minor errors such as this would be to turn the Act into a strict liability statute, which was not Congress's intent.  Anderson, 345 F. Supp 2d at 976.

Nonetheless, plaintiff argues that defendant acted in willful noncompliance of the Act because the statute requires credit reporting agencies to delete non-verified information and

give notice to consumers when they reinsert previously deleted information, 15 U.S.C. § 1681i(a)(5)(A) and (B).  The undisputed facts show that defendant did not remove the disputed information promptly and allowed it to reappear without notice.

With respect to the names and addresses that were not removed initially, defendant's responses did not comply strictly with the Act.  Again, the Act is not a strict liability statute.  To show willfulness, plaintiff must show that defendant failed to remove the names in conscious disregard for his rights or that it engaged in intentional concealment or misrepresentations.  Plaintiff has presented no evidence of either of these things.  Instead, the undisputed facts show that after each dispute letter from plaintiff, defendant sent plaintiff a credit history report with the results of its investigations.

With respect to the reappearance of the disputed address, plaintiff has identified only one instance in which defendant violated the statute and has offered no evidence of conscious disregard, concealment or misrepresentation by defendant.  Defendant's failure to delete addresses and names and keep them from reappearing on plaintiff's credit report was a negligent violation of the Act, at worst.  It does not warrant statutory and punitive damages.

3. Defendant's alleged failure to prevent the merging of plaintiff and his sister's files

The Act does not affirmatively require credit reporting agencies to insure that files are

22

not mixed unintentionally.  Therefore, defendant's failure to prevent this from occurring cannot be willful noncompliance with the Act.  This type of error would not be readily apparent to defendant.  Only consumers who are checking their credit reports would recognize the errors and report them to the credit reporting agency.  When plaintiff did this, defendant began investigating plaintiff's credit report to resolve the errors.  It fulfilled its basic obligations under the Act by investigating.  If, in this instance, defendant violated the Act, and I do not suggest it did, it did so negligently.

Because defendant's action did not rise to the level of knowing, intentional or reckless disregard of the Act, a reasonable jury could not find that defendant acted in willful noncompliance with the Act under § 1681n.  Defendant's motion for summary judgment on plaintiff's claim for statutory and punitive damages will be granted.


ORDER

IT IS ORDERED that defendant CSC Credit Services Inc.'s motion for summary

23

judgment, dkt. #41, is GRANTED on all grounds.  The clerk of court is directed to close this case and enter judgment for defendant.

Entered this 6th day of April, 2009.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge

24